UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**PHEOSHA WRIGHT**,
as Personal Representative for the Estate of
**TIMOTHY T. NABORS, JR.**, Deceased, and
**TIMOTHY T. NABORS, SR.**, Next of Kin,

    Plaintiff,

v.

**JARED HOY**, Secretary, Wisconsin Department
of Corrections; **DYLAN RADTKE**, Warden,
Green Bay Correctional Institution; and
**JOHN/JANE DOES** 1–5, in their individual and
official capacities,

    Defendants.

Case No: _____

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

### INTRODUCTION

This is a civil rights and wrongful death action arising from the murder of Timothy T. Nabors, Jr., ("Nabors") a 25-year-old Black man, who was stabbed to death on October 21, 2022, by a white supremacist inmate at Green Bay Correctional Institution ("GBCI") while under the custody and care of the Wisconsin Department of Corrections ("WDOC").

Defendants failed in their constitutional duty to protect Nabors from known, obvious, and racially motivated threats of serious harm, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983, and are further liable for wrongful death under Wisconsin law.

This case is emblematic of the systemic failures at GBCI: understaffing, lax contraband enforcement, tolerance of white supremacist threats, and deliberate disregard of inmate safety.

## JURISDICTION AND VENUE

Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367, and 42 U.S.C. § 1983.

Venue is proper in this Court under 28 U.S.C. § 1391(b), as the events giving rise to this Complaint occurred at GBCI in Brown County, Wisconsin.

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state claims under negligent cause of action.

## NOTICE OF CLAIM

Pheosha Wright ("Wright") filed a notice of claim pursuant to Wisconsin Statute § 893.82 sending it certified to the Attorney General office at 17 W. Main Street, PO Box 7857, Madison, WI 53707.

## PARTIES

1. Plaintiff Pheosha Wright is the mother and duly authorized personal representative of the Estate of Timothy T. Nabors, Jr.

2. Plaintiff Timothy T. Nabors, Sr., is the father and next of kin to Timothy T. Nabors, Jr.

3. At the time of his death, Nabors was incarcerated at GBCI.

4. Defendant Jared Hoy is Secretary of the WDOC, responsible for the creation, oversight, and enforcement of policies and customs governing Wisconsin correctional institutions.

5. Defendant Dylan Radtke was the Warden of GBCI, responsible for the supervision, training, and discipline of staff, and the custody, care, and safety of all inmates housed at GBCI at all relevant times.

6. John/Jane Does 1-5 are medical staff, who are responsible for the Persons in their care ("PIOC") by providing proper medical treatment.

7. John/Jane Does 1–5 are correctional officers, supervisors, and/or administrators whose identities are presently unknown but who participated in the acts and omissions leading to Nabors' death.

## FACTUAL ALLEGATIONS

8. On October 21, 2022, at approximately 6:30 a.m., inmates were released for morning medication distribution in GBCI's South Cell Hall.

9. During this time, inmate Joshua J. Scolman ("Scolman"), a known Aryan Nations gang member and white supremacist, initiated a violent altercation.

10. Officers observed Scolman chasing another Black inmate, Lamonte Washington ("Washington"), down a stairwell. When subdued, Scolman was found carrying a 12-inch homemade knife, fashioned from a bed frame, along with a sheath strapped to his belt.

11. While being escorted, Scolman made racially derogatory remarks about Black inmates nearby, officers discovered Nabors bleeding heavily on the second tier, with a blood trail marking the site of the attack.

12. Nabors suffered a penetrating chest wound that perforated his heart. Though initially responsive, he quickly deteriorated, telling staff he felt dizzy. He lost consciousness while awaiting emergency treatment in the rotunda. Paramedics transported Nabors to HSHS St. Vincent Hospital, where he remained on life support until being declared brain dead on October 26, 2022.

13. The Death Certificate lists cause of death as complications of stab wound to chest and manner of death as homicide.

14. Scolman's murder of Nabors was prosecuted with a hate crime enhancer, reflecting its racially motivated nature.

15. Scolman was found guilty of first-degree intentional homicide with the hate crime enhancer and use of a dangerous weapon against Nabors.

16. DOC policy required that all inmates pass through metal detectors in the rotunda before entering South Cell Hall. Despite this, Scolman possessed a large metal weapon, which could not have entered without staff negligence or complicity.

17. Staffing shortages led to chaotic mass inmate movements during med pass, creating conditions in which Scolman could carry out his threats.

18. The South Cell Hall where the homicide happened consists of four tiers: E, F, G and H, vertically.

19. Nabors and Scolman were housed on the H tier in H17 and H6, respectively.

20. At med pass, which is considered a mass movement, there should be staff on both ends of H range. Due to lack of staff, only three to five inmates are let out at a single time.

21. However, according to the video footage, there was a disproportionate number of staff (3) compared to the number of inmates (15) that were let out for their meds at one time.

22. There should be at a minimum of six to eight staff per cell hall.

23. On October 21, 2022, John / Jane Does released too many inmates out at once during med pass, which included Nabors and Scolman, who should not have been out at the same time.

24. Video footage shows Scolman on his way back from med pass when crossing path with Nabors and Washington, which should have never happened. Due to the lack of staff, Scolman should have been secured in his cell before Nabors and Washington were let out for med pass.

25. Defendants Hoy, Radkte, John and Jane Does failed to have the proper medical staff working in their prison trained to perform the proper procedures to safe Nabors life.

26. According to a non-defendant Emergency Medical Technician ("EMT"), that was on scene for the transfer of Nabors to HSHS St. Vincent Hospital, he acknowledged on video that GBCI has nurses on staff; however, they are very likely not trained for trauma situations to provide emergency care to critically injured patients, such as Nabors.

27. Psychological Service Unit ("PSU") staff, John / Jane Does failed to protect Nabors from Scolman when they knew or should have known of his desire to kill Black people.

28. Persons in Our Care openly witnessed Scolman threatened to kill a Black inmate in the presence of Officers John / Jane Doe.

29. Scolman's security and psychological files reflected his violent history, racial animus, and risk to other inmates. Defendants knew or should have known of these risks yet failed to act.

30. GBCI and WDOC systematically tolerated white supremacist groups while disproportionately labeling Black and Brown inmates as gang-affiliated, creating a racially biased security culture that endangered Nabors and others.

31. As a direct and proximate result of Defendants deliberate indifference, Timothy Nabors, Jr. was murdered while in custody of Jared Hoy, Dylan Radtke along with John & Jane Does.

# CLAIMS

## COUNT I – 42 U.S.C. § 1983 – EIGHTH AMENDMENT

### (Deliberate Indifference / Failure to Protect)

32. Plaintiff realleges paragraphs 1-31 above as if more particularly described herein.

33. Defendants knew that Nabors faced a substantial risk of serious harm at the hands of violent, racist inmates such as Scolman.

34. Under *Farmer v. Brennan*, 511 U.S. 825 (1994), prison officials violate the Eighth Amendment when they are deliberately indifferent to such risks.

35. Defendants ignored clear warnings, failed to enforce contraband procedures, and permitted chaotic inmate movement, directly leading to Nabors' death.

36. By their acts and omissions, Defendants inflicted cruel and unusual punishment in violation of Nabors' Eighth Amendment rights.

37. The Defendant's under the Eighth Amendment violated Nabors condition of confinement to be in a safer environment.

## COUNT II – 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT

### (Equal Protection)

38. Plaintiff realleges paragraphs 1-37 above as if more particularly described herein.

39. The attack on Nabors was racially motivated, and Defendants' failures disproportionately exposed Black inmates to violence while tolerating white supremacist threats.

40. The prison administration is more lax on white supremacists, but they target Black gangs.

41. By failing to act against known racial threats, Defendants violated Nabors' right to Equal Protection of the laws.

## COUNT III – 42 U.S.C. § 1983 – FAILURE TO TRAIN AND SUPERVISE

### (Monell Liability)

42. Plaintiff realleges paragraphs 1-41 above as if more particularly described herein.

43. WDOC and GBCI maintained customs of inadequate staffing, tolerance of white supremacist groups, and failure to enforce security procedures, amounting to unconstitutional policies.

44. Defendants Hoy and Stevens had actual and constructive notice of these systemic failures and yet failed to correct them.

45. Their deliberate indifference caused Nabors' death, establishing Monell liability.

## COUNT IV – WRONGFUL DEATH (Wis. Stat. § 895.04) AND NEGLIGENCE

46. Plaintiff realleges paragraphs 1-45 above as if more particularly described herein.

47. Defendants owed Nabors a duty of reasonable care and safety while in custody.

48. Defendants breached this duty by failing to protect Nabors from a foreseeable, racially motivated attack, lack of security during mass movement, failure to follow their own GBCI policy and practices and failure to have properly trained medical staff.

49. Defendants breach of duty was the proximate cause of Nabor's death.

50. Plaintiff, as Nabors' mother, is entitled to damages for loss of society and companionship, funeral expenses, and other pecuniary losses under Wisconsin law.

## DAMAGES

As a result of Defendants' conduct, Nabors experienced:

A. Conscious pain and suffering before death;

B. Fear and psychological trauma during the attack;

C. Loss of life.

Plaintiff and the family of Nabors suffered:

D. Loss of society, love, and companionship;

E. Emotional distress and grief;

F. Funeral and medical expenses;

G. Pecuniary losses.

H. Defendant's conduct was reckless, wanton, and deliberately indifferent, warranting punitive damages under § 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. Compensatory damages in an amount to be determined by the jury;

2. Wrongful death damages under Wis. Stat. § 895.04;

3. Punitive damages against individual defendants;

4. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

5. Pre- and post-judgment interest; and

6. All other relief this Court deems just and proper.

## VERIFICATION

Pursuant to 28 U.S.C §1746 (2), the undersign verifies that the above averments are true and correct, based on personal knowledge and upon information and belief, which the undersign also believes is true and correct.

Dated this 19th day of October 2025

/s/ Michele K. Figueroa
Michele K. Figueroa
Attorney for Plaintiff
State Bar No.: 1025541

Mailing Address:
Figueroa & Associates, LLC
PO Box 470843
Charlotte, NC 28247
414-342-3580 (w)
mfigueroa@figueroafirm.com

Dated this 19th day of October 2025

/s/ Lonnie D. Story
Lonnie D. Story
Attorney for Plaintiff
State Bar No.: 1121459

Mailing Address:
Story Law Firm, LLC
732 N. Halifax Ave., Ste. 301
Daytona Beach, FL 32118-3833
(386) 492-5540
lstorylaw@gmail.com