**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**PHEOSHA WRIGHT**,
as Personal Representative for the Estate of
**TIMOTHY T. NABORS, JR**., Deceased, and
**TIMOTHY T. NABORS, SR.**, Next of Kin,

Plaintiff,

v.

**DYLAN RADTKE**, Warden,
Green Bay Correctional Institution; and
**JOHN/JANE DOES** 1–5, in their individual capacities,

Defendants.

Case No: 25-CV-1596

**JURY TRIAL DEMANDED**

---

## FIRST AMENDED COMPLAINT

---

## INTRODUCTION

This is a civil rights and wrongful death action arising from the murder of Timothy T. Nabors, Jr., ("Nabors") a 25-year-old Black man, who was stabbed to death on October 21, 2022, by a white supremacist inmate at Green Bay Correctional Institution ("GBCI") while under the custody and care of the Wisconsin Department of Corrections ("WDOC").

Defendants failed in their constitutional duty to protect Nabors from known, obvious, and racially motivated threats of serious harm, in violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. All named Defendants acted under the color of state law and are further liable for wrongful death under Wisconsin law.

This case is emblematic of the systemic failures at GBCI: understaffing, lax contraband enforcement, tolerance of white supremacist threats, and deliberate disregard of inmate safety.

## JURISDICTION AND VENUE

1. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367, and 42 U.S.C. § 1983. Venue is proper in this Court under 28 U.S.C. § 1391(b), as the events giving rise to this Complaint occurred at GBCI in Brown County, Wisconsin. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state claims under negligent cause of action.

## NOTICE OF CLAIM

2. Pheosha Wright ("Wright") filed a notice of claim, on April 30, 2024, pursuant to Wisconsin Statute § 893.82 sending it certified to the Attorney General office at 17 W. Main Street, PO Box 7857, Madison, WI 53707. On several occasions, counsel contacted the Attorney General office via telephone attempting to resolve the matter and gather information to no avail.

## PARTIES

3. Plaintiff Pheosha Wright is the mother and duly authorized personal representative of the Estate of Timothy T. Nabors, Jr.

4. Plaintiff Timothy T. Nabors, Sr., is the father and next of kin to Timothy T. Nabors, Jr.

5. At the time of his death, Nabors was incarcerated at GBCI.

6. Defendant Dylan Radtke was the Warden of GBCI, responsible for the supervision, training, and discipline of staff, and the custody, care, and safety of all inmates housed at GBCI at all relevant times. Also pertaining to Dylan Radtke's position description, he has the authority to hire, promote, transfer, or discharge employees.

7. John/Jane Does 1-5 are medical staff, who are responsible for the Persons in their Care ("PIOC") by providing proper medical treatment.

8. John/Jane Does 1–5 are correctional officers, supervisors, and/or administrators whose identities are presently unknown, but who participated in the acts and omissions leading to Nabors' death.

## FACTUAL ALLEGATIONS

## HOMICIDE OF TIMOTHY NABORS

9. On October 21, 2022, at approximately 6:30 a.m., inmates were released for morning medication distribution in GBCI's South Cell Hall.

10. During this time, inmate Joshua J. Scolman ("Scolman"), a known Aryan Nations gang member and white supremacist, initiated a violent altercation.

11. Officers observed Scolman chasing another Black inmate, Lamonte Washington ("Washington"), down a stairwell. When subdued, Scolman was found carrying a 12-inch homemade knife, fashioned from a bed frame, along with a sheath strapped to his belt.

12. While being escorted, Scolman made racially derogatory remarks about Black inmates nearby, and officers discovered Nabors bleeding heavily on the second tier, with a blood trail marking the site of the attack.

13. Nabors suffered a penetrating chest wound that perforated his heart. Though initially responsive, he quickly deteriorated, telling staff he felt dizzy. He lost consciousness while awaiting emergency treatment in the rotunda. Paramedics transported Nabors to HSHS St. Vincent Hospital, where he remained on life support until being declared brain dead on October 26, 2022.

14. The Death Certificate lists cause of death as complications of stab wound to chest and manner of death as homicide.

15. Scolman's murder of Nabors was prosecuted with a hate crime enhancer, reflecting its racially motivated nature.

16. Scolman was found guilty of first-degree intentional homicide with the hate crime enhancer and use of a dangerous weapon against Nabors.

**SCOLMAN'S VIOLENT HISTORY WAS ACTUALLY KNOWN BY DEFENDANT DYLAN RADTKE**

17. Scolman was placed in what is called administrative confinement (AC – indefinite segregation) for being ". . . a substantial risk to another person. . . institution security, as evidence by a behavior or a history of homicidal, assaultive or other violent behavior. . ."

18. While Scolman was in AC status for twelve months or longer, "Warden Dylan Ratke shall automatically review the record and decision by the administrative confinement review committee (ACRC) to continue Scolman's confinement in this status."

19. In fact, while in AC status, Warden Ratke reviewed Scolman's "monthly progress" consistent with the segregation review progress, to determine appropriate release of said inmate.

20. Scolman was placed in AC for stabbing an inmate before Timothy Nabors. Scolman's entire record and documented violent behaviors was reviewed by Warden Dylan Ratke monthly.

21. Being that Warden Ratke reviewed Scolman's entire record monthly, he was very familiar with Scolman's history of stabbing inmates.

**WARDEN DYLAN RADTKE'S METAL DETECTOR POLICY**

22. The Wisconsin Department of Corrections allows every Warden of its prison to implement its own policies consistent with the safety of its inmates.

23. Upon information and belief, in 2018 Warden Dylan Ratke implemented policies governing the metal detectors that are stationary in the rotunda area due to multiple stabbings in his prison. (But not limited to just stabbings).

24. In Green Bay Correctional Institution, every inmate must go through the rotunda to get anywhere in the prison once they have exited their respective cell halls (living quarters).

25. Due to stabbings, make-shift knives being found, threats on inmates and staff lives alike, the metal detector policy by Warden Ratke was enforced in 2018.

26. Warden Ratke, Deputy Warden, Security Director, a Supervisor and Rotunda Sergeant / Officer had at least on a monthly basis security meetings governing the enforcement of the metal detector policy implemented by Ratke.

27. The metal detector security meetings, supra 26, consist of the review of any incident reports, conduct reports, or warnings given to inmates for contraband found on them while attempting to pass through the metal detector.

28. The metal detector security meetings consist of reviewing cameras stationed in the rotunda to detect how many inmates were able to creep past the metal detector without going through it.

29. Defendant Radkte's policy required that all inmates pass through metal detectors in the rotunda before entering a Cell Hall. Despite this, Scolman possessed a large metal weapon, which could not have entered without staff negligence or complicity.

**STRUCTURE FOR MEDICATION "MED" PASS POLICY CREATED BY DEFENDANT DYLAN RADTKE**

30. Defendant Dylan Radtke created medical pass movement policy in Green Bay Correctional Institution when he was warden.

31. Staffing shortages led to chaotic mass inmate movements during med pass, creating conditions in which Scolman could carry out his threats.

32. The South Cell Hall where Timothy Nabors was murdered consists of four tiers: E, F, G and H, vertically.

33. Nabors and Scolman were housed on the H tier in H17 and H6, respectively.

34. Due to the shortage of staff, there should have been limited inmates let out for med pass at a time.

35. However, according to video footage there was a disproportionate number of staff (3) compared to the number of inmates (15) that were let out for meds or med pass at one time, which is in violation of Radtke's policy.

36. At med pass, which is considered a mass movement, there should be staff on both ends of every range.

37. Due to lack of staff, only three to five inmates should be let out at a single time.

38. There should be a minimum of six staff per cell hall.

39. On October 21, 2022, John / Jane Does released too many inmates out at once during med pass, which included Nabors and Scolman, who should not have been out at the same time.

40. Upon information and belief, Persons in our Care ("PIOC") openly witnessed Scolman threatened to kill a Black inmate in the presence of Officers John / Jane Doe, before they were let out for med pass.

41. Video footage shows Scolman on his way back from med pass when crossing path with Nabors and Washington, which should have never happened. Due to the lack of staff, Scolman should have been secured in his cell before Nabors and Washington were let out for med pass.

**DEFENDANT DYLAN RADTKE FAILED TO HIRE PROPER MEDICAL STAFF**

42. Defendant Radkte, failed to hire proper medical staff at Green Bay Correctional Institution that were trained to perform the proper procedure to possibly save Timothy T. Nabors, Jr. life.

43. According to a non-defendant Emergency Medical Technician ("EMT"), that was on scene for the transfer of Nabors to HSHS St. Vincent Hospital, he acknowledged on video that GBCI has nurses on staff; however, they are very likely not trained for trauma situations to provide emergency care to critically injured patients, such as Nabors.

44. Defendant Radtke has the authority to hire and / or contract with outside medical personnel for Green Bay Correctional Institution.

45. Defendant Radkte is fully aware that the prison setting is a violent environment. This consists of assaults (physical and sexual), along with stabbings (injuries and death).

46. This is one of the reasons, supra 45, why Warden Dylan Radtke implemented the 2018 metal detector policy.

47. Dylan Ratke is fully aware that a violent environment should naturally come with the assistance of properly trained lifesaving medical staff, which he failed to hire and / or contract with.

**ROTUNDAS CORRECTIONAL OFFICERS / SERGEANT ROLE IN HOMICIDE**

48. Defendant Radtke's rotunda medical detectors procedural implementation was to protect the staff, public and inmates alike.

49. Rotunda officer and sergeant John / Jane Does knew the prison was a violent environment.

50. Over the years, several attacks on inmates and staff alike happened right in the rotunda area, which has been captured on rotunda cameras.

51. All inmates must pass through the rotunda metal detectors in exiting and entering their cell halls.

52. If an inmate has metal in their bodies, i.e. from surgery, they are thoroughly pat searched when coming through the rotunda.

53. Whether Scolman circumvented the metal detector procedures by slipping through or a staff was complacent in him doing so – the Rotunda Officer / Sergeant, John / Jane Does, failed Timothy T. Nabors, Jr.

54. Scolman needed a tool to remove the metal from the alleged bed frame as it is attached with metal bolts.

55. Wisconsin Department of Corrections has tools that are made out of metal mainly in several departments that are accessible to inmates, e.g. maintenance department and yard crew.

56. Upon information and belief, Scolman either worked in one of the departments, supra 55, or had white supremacist friends that worked in those departments.

## CLAIMS

### COUNT I – 42 U.S.C. § 1983 – EIGHTH AMENDMENT

(Deliberate Indifference / Failure to Protect)

57. Plaintiff realleges paragraphs 1-56 above as if more particularly described herein.

58. *Farmer vs. Brennan*, 511 U. S. 825, 837 (1994). Prison officials knew of and disregarded an excessive risk to an inmate's health or safety. In other words, the official must both be aware of facts which inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

59. Though the defendant cannot prevent every potential assault on an inmate, Timothy T. Nabors death could have been prevented because:

60. Defendant Dylan Radtke was fully aware of Joshua Scolman's violent history as he reviewed his record monthly.

61. Defendant Dylan Radtke took measures to implement metal detector procedures, which should have been enough to prevent the murder of Timothy T. Nabors, Jr. if the metal detector procedure was properly enforced.

62. Defendant Dylan Radtke had at a bare minimum, monthly meetings, which consisted of inmates violating the metal detectors procedures, issuing conduct reports and incident reports and warnings issued to inmates.

63. Defendant Dylan Radtke was fully aware that prison is a violent environment and had sole authority to hire properly trained medical staff, that could have possibly saved Timothy T. Nabors, Jr.'s life, but chose not to do so.

64. Defendants John and Jane Does, who are the Rotunda Officers / Sergeants attended Dylan Radtke security meetings about the metal detector policies.

65. Defendants John and Jane Does, who are the Rotunda Officers / Sergeants, were complicit when they either allowed Scolman to go past the metal detector without going through it or allowed him to violate the metal detector procedure.

66. Defendants John and Jane Does, who are the Rotunda Officers / Sergeants are fully aware that prison is a violent environment for the very reason they are in the rotunda enforcing Defendant Radtke's metal detector procedure.

67. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass wase fully aware that prison is an violent environment.

68. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass, was always fully aware that Green Bay Correctional Institution was lacking staff.

69. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass, was fully aware of the medication pass procedure, e.g. how many inmates are let out at a time.

70. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass, upon information and belief, heard Scolman threatened to kill a black man.

71. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass, violated medication pass protocol, which allowed Scolman and Nabors to cross paths that day.

**COUNT II – WRONGFUL DEATH (Wis. Stat. § 895.04) AND NEGLIGENCE**

72. Plaintiff realleges paragraphs 1-71 above as if more particularly described herein.

73. Defendants owed Nabors a duty of reasonable care and safety while in custody.

74. Defendants breached this duty and the breach of duty was the proximate cause of Timothy T. Nabors, Jr.'s death.

75. Defendant Dylan Radtke was fully aware of Joshua Scolman's violent history as he reviewed his record monthly.

76. Defendant Dylan Radtke took measures to implement metal detector procedures, which should have been enough to prevent the murder of Timothy T. Nabors, Jr. if the metal detector procedure was properly enforced.

77. Defendant Dylan Radtke had at a bare minimum, monthly meetings, which consisted of inmates violating the metal detectors procedures, issuing conduct reports and incident reports and warnings issued to inmates.

78. Defendant Dylan Radtke was fully aware that prison is a violent environment and had sole authority to hire properly trained medical staff, that could have possibly saved Timothy T. Nabors, Jr.'s life, but chose not to do so.

79. Defendants John and Jane Does, who are the Rotunda Officers / Sergeants attended Dylan Radtke security meetings about the metal detector policies.

80. Defendants John and Jane Does, who are the Rotunda Officers / Sergeants were complicit when they either allowed Scolman to go past the metal detector without going through it or allowed him to violate the metal detector procedure.

81. Defendants John and Jane Does, who are the Rotunda Officers / Sergeants are fully aware that prison is a violent environment for the very reason they are in the rotunda enforcing Defendant Radtke's metal detector procedure.

82. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass was always fully aware that prison is a violent environment.

83. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass, was always fully aware that Green Bay Correctional Institution was lacking staff.

84. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass, was fully aware of the medication pass procedure, e.g. how many inmates are let out at a time.

85. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass, upon information and belief, heard Scolman threatened to kill a black man.

86. Defendants Correctional Officers John and Jane Does, who stood as security during medication pass, violated medication pass protocol, which allowed Scolman and Nabors to cross paths that day.

87. Plaintiffs, as Nabors' mother and father, are entitled to damages for loss of society and companionship, funeral expenses, and other pecuniary losses under Wisconsin law.

## DAMAGES

As a result of Defendants' conduct, Nabors experienced:

A. Conscious pain and suffering before death;

B. Fear and psychological trauma during the attack;

C. Loss of life.

Plaintiff and the family of Nabors suffered:

D. Loss of society, love, and companionship;

E. Emotional distress and grief;

F. Funeral and medical expenses;

G. Pecuniary losses.

H. Defendant's conduct was reckless, wanton, and deliberately indifferent, warranting punitive damages under § 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. Compensatory damages in an amount to be determined by the jury;
2. Wrongful death damages under Wis. Stat. § 895.04;
3. Punitive damages against individual defendants;
4. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;
5. Pre- and post-judgment interest; and
6. All other relief this Court deems just and proper.

## VERIFICATION

Pursuant to 28 U.S.C §1746 (2), the undersign declares that the above averments are true and correct, based on personal knowledge and upon information and belief, after investigation, which the undersign also believes is true and correct.

Dated this 22nd day of June 2026

/s/ Michele K. Figueroa
Michele K. Figueroa
Attorney for Plaintiff, Pheosha Wright
State Bar No.: 1025541

Mailing Address:
Figueroa & Associates, LLC
PO Box 470843
Charlotte, NC 28247
414-342-3580 (w)
mfigueroa@figueroafirm.com

Dated this 22nd day of June 2026

/s/ Lonnie D. Story
Lonnie D. Story
Attorney for Plaintiff, Timothy T. Nabors, Sr.
State Bar No.: 1121459

Mailing Address:
Story Law Firm, LLC
732 N. Halifax Ave., Ste. 301
Daytona Beach, FL 32118-3833
(386) 492-5540
lstorylaw@gmail.com