UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PHEOSHA WRIGHT,
*as Personal Representative for the Estate of Timothy T. Nabors, Jr.*,
and
TIMOTHY NABORS, SR.,
*Next of Kin*,

Plaintiffs,

v. Case No. 25-cv-1596-bhl

DYLAN RADTKE et al.,

Defendants.

---

**DECISION AND ORDER**

---

On October 21, 2022, Timothy T. Nabors, Jr., who was incarcerated at the Green Bay Correctional Institution, was stabbed in the chest by another inmate, Joshua Scolman. Five days later, Nabors succumbed to his injuries and died. Nearly three years later, on October 20, 2025, Plaintiffs brought this action, which has proven to be procedurally complicated even though it has not proceeded past the pleading stage. On June 1, 2026, the Court granted a motion for judgment on the pleadings filed by the two named Defendants, Department of Corrections Secretary Jared Hoy and Warden Dylan Radtke, but gave Plaintiffs the opportunity to file an amended complaint. In response, Plaintiffs filed both an amended complaint and an (unnecessary) motion to amend. Dkt. Nos. 19, 20. Warden Radtke, the only named Defendant in the amended complaint, responded with a motion to dismiss and, after that motion was fully briefed, Plaintiffs filed a motion for leave to file a second amended complaint. Dkt. Nos. 21, 27. For the reasons explained below, the Court will deny as moot Plaintiffs' motion for leave to amend/correct the complaint, grant Warden Radtke's motion to dismiss, deny Plaintiffs' motion for leave to file a second amended complaint, and dismiss this case.

## ALLEGATIONS OF THE AMENDED COMPLAINT (DKT. NO. 20)

Plaintiffs allege that, at about 6:30 a.m. on October 21, 2022, at the Green Bay Correctional Institution, some inmates were released from their cells for medication distribution. During this time, Scolman, who Plaintiffs assert is a known Aryan Nations gang member and white supremacist, initiated a violent altercation. Officers allegedly observed Scolman chasing a Black inmate down a stairwell. Officers subdued Scolman and found a makeshift knife fashioned from a bed frame. While escorting Scolman, officers found Nabors bleeding on the second tier. He had been stabbed in the chest, and although he was initially responsive, he quickly deteriorated and lost consciousness. Nabors was transported to the hospital, where he remained on life support until he was declared braindead five days later, on October 26, 2022.

According to Plaintiffs, at some unspecified time, Scolman had been placed on administrative confinement status for stabbing another inmate. Plaintiffs then confusingly allege that this placement was related to Scolman being "'a substantial risk to another person . . . institution security, as evidence by a behavior or a history of homicidal, assaultive or other violent behavior . . . .'"[1] Dkt. No. 20 at ¶17 (ellipses in the original).

With respect to Warden Radtke's involvement, Plaintiffs allege that, during the time that Scolman was on administrative confinement status, Warden Radtke was tasked with "'automatically review[ing] the record and decision by the administrative confinement review committee (ACRC) to continue [the inmate's] confinement in this status.'"[2] *Id.* at ¶18. Plaintiffs further allege that Warden Radtke reviewed Scolman's monthly progress to determine whether he could be released to the general population.

Plaintiffs also allege that Warden Radtke "implemented policies governing the metal detectors" stationed in the rotunda to maintain order and security. Dkt. No. 20 at ¶22. Plaintiffs assert that the metal detector policies had been enforced by Warden Radtke since 2018 and that Warden Radtke and other supervisory staff met monthly to review incidents, conduct reports, or warnings given to inmates who were caught with contraband while passing through the metal detector. Video of the rotunda was also reviewed in an effort to determine how many inmates were able to enter the rotunda without going through the metal detector. According to Plaintiffs,

[1] Plaintiffs do not provide the source of this quoted statement.
[2] Plaintiffs do not provide the source of this quoted statement.

Scolman must have circumvented the metal detector by slipping through or because an unidentified officer allowed him to do so.

Plaintiffs also allege that Warden Radtke created policies to govern the movement of inmates during medication pass. They assert that Nabors and Scolman were housed on the same tier. Plaintiffs allege that, in violation of Warden Radtke's policies, unnamed officers let too many inmates out of their cells at the same time. Specifically, Plaintiffs contend that in their view, only three to five inmates should have been released from their cells at the same time, given limited staff, but officers released fifteen inmates, including Nabors and Scolman. Plaintiffs allege that unnamed officers witnessed Scolman threatening to kill a Black man (not Nabors) before he was released from his cell.

Finally, Plaintiffs allege that Warden Radtke failed to hire medical staff who were trained for trauma situations. Plaintiffs allege that Warden Radtke has the authority to hire and/or contract with outside medical personnel. They assert that Warden Radtke is aware that the prison setting is violent and that such a setting demands properly trained medical staff.

The Amended Complaint also names multiple unidentified Doe Defendants. With respect to these unidentified individuals, Plaintiffs allege that, over the years, several attacks on inmates and staff have happened in the rotunda area despite all inmates having to pass through the rotunda metal detectors when they exit and enter their cell halls. Plaintiffs acknowledge that it is unknown whether Scolman circumvented the metal detectors or whether staff was complacent in allowing him to do so.

## LEGAL STANDARD

A motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(6), which allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## THE COURT'S ANALYSIS

### 1. Plaintiffs Fail to State a Claim against Warden Radtke

Plaintiffs assert that Warden Radtke and unnamed officers "knew of and disregarded an excessive risk" to Nabors' health and safety. Plaintiffs concede that prison officials cannot prevent every potential assault on an inmate, but they argue that Nabors' murder could have been prevented had Warden Radtke acted on his knowledge of Scolman's violent history. Moreover, they assert that unnamed officers could have prevented Nabors' murder if someone had responded to Scolman's threats to a Black inmate (not Nabors) or if they had properly enforced Warden Radtke's metal detector policies, which Plaintiffs assert "should have been enough to prevent the murder of Timothy J. Nabors, Jr." Finally, Plaintiffs assert that Nabors' life could have "possibly" been saved if Warden Radtke had hired properly trained medical staff.

Under the Eighth Amendment, "prison officials must take reasonable measures to ensure an inmate's safety." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "To state a claim premised on prison officials' failure to protect him from harm, [a plaintiff] must allege that the defendants knew of and disregarded an 'excessive risk' to his 'health and safety.'" *Id*. (citing *Farmer*, 511 U.S. at 837).

Plaintiffs have not sufficiently alleged that Warden Radtke "knew" Scolman posed an "excessive risk" to Nabors before he attacked him. As the alleged basis for Warden Radtke's knowledge, Plaintiffs highlight only that Scolman was on administrative confinement status for previously stabbing an inmate, but Plaintiffs do not allege when the stabbing occurred, whether the stabbing was racially motivated, whether Scolman was the aggressor, or when Scolman was released from administrative confinement status. Essentially, Plaintiffs' allegation is only that, at some time in the past, Warden Radtke knew that Scolman was a generally dangerous and violent

person. But, as Defendants highlight, Green Bay Correctional Institution is a maximum-security institution that houses *numerous* dangerous and violent individuals. To impute to Warden Radtke knowledge of a specific and substantial threat to Nabors based only on allegations of Scolman's general propensity for violence would obviate the requirement that Plaintiffs plead personal knowledge. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (explaining that a plaintiff must "ground his legal conclusions in a sufficiently plausible factual basis").

Moreover, even if Plaintiffs had sufficiently alleged that Warden Radtke knew Scolman posed an excessive risk to Nabors' safety, the Court cannot reasonably infer that Warden Radtke disregarded that risk. According to Plaintiffs, in response to a concern about staffing numbers, Warden Radtke created policies regarding the movement of inmates during medication pass to ensure a manageable prisoner to staff ratio while prisoners were out of their cells. And, in response to the general violence at the prison and to maintain the safety of both prisoners and staff, Warden Radtke created policies governing the use of metal detectors in the rotunda. Plaintiffs assert that Warden Radtke also met with security staff regularly to review violations of the policy, presumably to address weaknesses being exploited by prisoners. The Court cannot reasonably infer from these allegations that Warden Radtke disregarded the risk inmates and staff faced from prisoners with violent tendencies. If anything, allegations that Warden Radtke took specific efforts to enact these policies shows he was attentive to the risks Plaintiffs' highlight. If correctional officers violated or failed to enforce these policies, that failure does not render Warden Radtke liable under §1983. It is long-established that the doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

For similar reasons, Plaintiffs fail to state a claim against Warden Radtke based on the conclusion that he did not hire properly trained nurses. Warden Radtke is not a medical professional, so he was entitled to delegate to the health services unit decisions regarding the hiring and training of medical staff. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Plaintiffs do not suggest that Warden Radtke had any reason to suspect that the unnamed nurses were unqualified to perform the duties of their positions, and any alleged failure to detect deficiencies in the hiring or training of the nurses amounts to, at most, negligence, which is not actionable under the Constitution. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

### 2. Plaintiffs' Claims against the Doe Defendants Will Be Time-Barred

In connection with Defendants' March 23, 2026 motion for judgment on the pleadings, they argued, in part, that the Court should not permit Plaintiffs to try to further amend their complaint to pursue claims against unidentified Doe Defendants because those claims were already time-barred and an amendment would be futile. Defendants pointed out that subsequent identification of a Doe Defendant would be pointless, because an amendment that named specific individuals would not relate back to the filing of the original complaint. Plaintiffs did not respond to Defendants' statute-of-limitations argument; instead, they asserted only that discovery was necessary to identify the names of the Doe Defendants. On June 1, 2026, the Court granted Defendants' motion for judgment on the pleadings. With regard to Plaintiffs' claims against the Doe Defendants, the Court confirmed that Defendants' relation-back arguments were correct. The Court noted that the statute of limitations had expired more than seven months earlier, in October 2025, and that Plaintiffs had not named as Defendants any correctional officers or nurses before the expiration of the limitations period. The Court therefore concluded that, because amended complaints that identify a Doe Defendant do *not* relate back to the original complaint, any claims against individual staff members in an amended complaint would be time-barred. Dkt. No. 18 at 4-5 (citing *Herrera v. Cleveland*, 8 F.4th 493, 498–99 (7th Cir. 2021)).

Plaintiffs now assert—for the first time—that the statute of limitations should be equitably tolled because the Attorney General's Office withheld the identity of the Doe Defendants. According to Plaintiffs' counsel, she "personally called the Attorney General's office attempting to resolve the matter and get needed information to no avail." Dkt. No. 19 at ¶2. She states that she called the Attorney General's office in September, October, and December 2024. She also states that she was informed by the operator that counsel's inquiry would be forwarded to the appropriate department. *Id*. at 2, n. 1. Plaintiffs' counsel includes no details about the contents of her so-called inquiries, but she asserts that "[i]f the Attorney General's office would have entertained at least one of counsel's phone calls, Defendants John Does would have been named in the original complaint." *Id.* at ¶9.

Plaintiffs' late attempt to revive their John Doe claims fails for a number of reasons. First, Plaintiffs' counsel's assertions to support her equitable tolling argument are entirely unsupported. She did not file a declaration or sworn statement, leaving her unsworn assertions with no evidentiary value (in addition to being noticeably nonspecific and vague.) More importantly,

Plaintiffs forfeited their argument that the statute of limitations should be equitably tolled when they failed to raise the issue in response to Defendants' motion for judgment on the pleadings. "When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. Although the district court is required to consider whether the plaintiff could prevail under any legal theory or set of facts, it will not invent legal arguments for its litigants and is not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Cnty. Of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) (citations omitted). Put plainly, Plaintiffs are stuck with the consequences of their failure to raise this issue in response to Defendants' motion for judgment on the pleadings. *See id*. at 817-20.

Moreover, even if the Court were to consider Plaintiffs' counsel's "efforts" to identify the Doe Defendants, her efforts as presented are insufficient to warrant equitable tolling of the statute of limitations. "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). Counsel does not explain why, despite allegedly filing a notice of claim under Wis. Stat. §893.82 on April 30, *2024*, and first contacting the Attorney General's office in October *2024*, Plaintiffs waited until October 20, *2025*, the day before the statute of limitations expired, to bring this case. Counsel also does not explain why she directed her inquiries to the Department of Justice rather than the Department of Corrections (the agency who employed the staff members). Nor does she describe the contents of the three phone calls she allegedly made to the Attorney General's office "to 'correct the lack of knowledge' on the John Does." Dkt. No. 19 at 2, 3. Leaving three messages with an operator at the Department of Justice with a request for a call back can hardly be characterized as the "exercise of all due diligence."

Accordingly, as the Court concluded in its decision granting Defendants' motion for judgment on the pleadings, it would be futile to allow Plaintiffs to proceed on claims against unnamed Defendants because any claims raised in an amended complaint that identifies those Defendants would be time-barred.

Having concluded that Plaintiffs fail to state a federal claim on which relief can be granted, the Court relinquishes its jurisdiction over the state law claims. *See* 28 U.S.C. §1367(c)(3).

## Plaintiffs' Motions

This case has been unnecessarily complicated by Plaintiffs' counsel's apparent unfamiliarity with the Federal Rules of Civil Procedure and the Court's local rules. On June 1, 2026, the Court gave Plaintiffs leave to file an amended complaint. On June 22, 2026, Plaintiffs filed a motion for leave to amend/correct the complaint. The Court will deny the motion as moot. The Court considered the assertions Plaintiffs' counsel raised in the motion in response to Warden Radtke's motion to dismiss, which is where those assertions should have been raised.

On August 25, 2026, weeks after Warden Radtke's motion to dismiss was fully briefed, Plaintiffs filed a motion for leave to file a second amended complaint. Dkt. No. 27. Plaintiffs refer to "[f]urther information [they] discovered, through major roadblocks and due diligence." They indicate that they "feel they have already indirectly received written consent from the opposing party to amend their complaint when they continue to file motions to dismiss for failure to state a claim." *Id.* Finally, Plaintiffs assert that Defendants will not be prejudiced by the amendment because the Court has not yet ruled on Defendant's motion to dismiss the first amended complaint. Plaintiffs assure the Court that the proposed second amended complaint is "equipped" with more factual details. *Id.*

The Court will deny Plaintiffs' motion for leave to file a second amended complaint because the motion does not comply with Civil L. R. 15, which requires that the motion "state specifically what changes are sought by the proposed amendments." Plaintiffs' vague assertion that the proposed second amended complaint is "equipped" with more detail is insufficient to satisfy this requirement. Moreover, Plaintiffs make no effort to explain why they did not include the unspecified "further information" in their first amended complaint, which they filed just two months earlier. Plaintiffs reference "major roadblocks" and "due diligence," but they neither detail their efforts, nor do they identify the obstacles they supposedly had to overcome. As Defendant Warden Radtke highlights, it would be unfairly prejudicial to require him to brief yet another Rule 12 motion unless good cause exists. But Plaintiffs have provided *no* cause for their initial failure to cure the deficiencies identified in the Court's June 1, 2026 decision. Accordingly, the Court will deny the motion. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (holding that, where a plaintiff repeatedly fails to cure deficiencies, the district court enjoys "broad discretion" to deny leave to amend); *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 520 (7th Cir. 2024) ("A district court does not abuse its discretion when it had explained what was wrong with the initial

complaint and had already provided one opportunity to amend. . . . This holds especially true where, as here, the plaintiffs were represented by counsel.") (citations and internal quotation marks omitted).

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to amend/correct the complaint (Dkt. No. 19) is **DENIED as moot**, Defendant's motion to dismiss (Dkt. No. 21) is **GRANTED**, and Plaintiffs' motion for leave to file a second amended complaint (Dkt. No. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of October, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge